IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JIMMY ROSS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-CV-4200 |
| | ) | |
| v. | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| THE UNIVERSITY OF CHICAGO, an | ) | Magistrate Judge Jeffrey T. Gilbert |
| Illinois Corporation, UCHICAGO ARGONNE, | ) | |
| LLC, Fire Chief GEORGE HYLAND, | ) | |
| Individually and in his Official Capacity, and | ) | |
| Fireman RICHARD KARA, individually and | ) | |
| In his Official Capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS UCHICAGO ARGONNE LLC AND GEORGE HYLAND'S
REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

The pleading standard set forth in Fed. R. Civ. P. ("Rule") 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2009)). Plaintiff Jimmy Ross' Response in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint ("Pl. Resp.") underscores that his Complaint is just that: a cacophony of conclusory allegations and facts which, taken as true, make clear that his claims are fatally flawed. More specifically, Plaintiff's Response fails to cite to case law to support his arguments; fails to respond to the arguments in Defendants' Memorandum of Law in Support of Their Motion to Dismiss ("Def. Mem."); and makes contradictory arguments in an attempt to save his civil rights and tort claims. Accordingly, because the facts as alleged do not entitle Plaintiff to relief even when taken as true, the Complaint should be dismissed in its entirety, with prejudice.

**ARGUMENT**

I. **PLAINTIFF'S CIVIL RIGHTS CLAIMS CANNOT SURVIVE A MOTION TO DISMISS**

    A. **Plaintiff Has Not Alleged that He Suffered an Adverse Employment Action, Dooming his Civil Rights Claims**

Plaintiff does not address Defendants' arguments about the specific adverse actions alleged in the Complaint, i.e., failure to provide Plaintiff a safe working environment, loss of sick time and the monetary value of such, and loss of managerial responsibilities and authority. Compl. ¶ 51; Def. Mem. 4-7. Accordingly, Plaintiff has waived any such arguments. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("When presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action.") (citing *Cty. of McHenry v. Ins. Co. of the West,* 438 F.3d 813, 818 (7th Cir. 2006)); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("If [judges] are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning. An unresponsive response is no response.").

Rather, Plaintiff argues that he experienced changes in his working conditions that constituted a "humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration" in his workplace, which can constitute an adverse employment action, as in cases of harassment. Pl. Resp. 3, citing *Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 744 (7th Cir. 2002) and *Nichols v. S. Illinois Univ.-Edwardsville*, 510 F.3d 772 (7th Cir. 2007). Although Plaintiff is correct that harassment can constitute an adverse action, neither *Nichols* nor *Herrnreiter* dealt with this concept. Further, in both cases the Seventh Circuit granted summary judgment for the *employer*. Accordingly, these cases do nothing to support Plaintiff's claims. More to the point, as discussed in further detail below, Plaintiff has not adequately pled his

harassment claims, so he cannot rely on Defendants' alleged "harassment" as the adverse employment action required to support his civil rights claims.

**B. Plaintiff Cannot Invoke the Continuing Violation Doctrine to Bring His Allegations of Harassment from 2013 into a Single Hostile Environment Claim**

In *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 (2002), the Supreme Court explained the "exceptional" nature of hostile environment claims, and held that such claims "will not be time-barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." When determining whether acts that occurred before the statutory period contribute to the same "hostile work environment" as timely acts, a court must consider whether the acts "involve the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Id*. at 120. Here, Plaintiff's allegations make clear that he can satisfy *none* of the factors articulated in *Morgan*, and therefore, his harassment claims may not include the allegations relating to Kara's allegedly hanging a black-faced puppet in Plaintiff's locker in 2013 (the "2013 Incident").

As to the first factor, the alleged 2013 Incident is completely different from the alleged acts in 2017 and 2018. As discussed in Defendants' opening Memorandum, unlike the alleged 2013 Incident, the allegations supporting the alleged hostile work environment under Chief Hyland have no connection whatsoever to Plaintiff's race and/or are entirely conclusory. Def. Mem. 10-11. Plaintiff does not respond to these arguments, and as such has waived the right to do so. *Bonte*, 624 F.3d at 466; *Kirksey,* 168 F.3d at 1041; *Jones v. Connors*, No. 11 C 8276, 2012 WL 4361500, at *7 (N.D. Ill. Sept. 20, 2012) ("[a] party's failure to respond to arguments the

opposing party makes in a motion to dismiss operates as a waiver or forfeiture of the claim and an abandonment of any argument against dismissing the claim").

The second factor regarding the frequency of the alleged acts also cuts against Plaintiff. In *Lucas v. Chicago Transit Auth.,* 367 F.3d 714, 727 (7th Cir. 2004), on which Plaintiff relies, the Seventh Circuit found that acts "so discrete in time or circumstances that they do not reinforce each other" do not constitute a single hostile work environment for purposes of defeating the statute of limitations (citing *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 708 (7th Cir. 2002)). The court held that a three-year gap between alleged hostile acts made application of the continuing violation doctrine inappropriate, concluding that to do so "stretches the application of a continuing violation theory beyond any workable limit." *Id.*

Here, the time gap is *even longer* than in *Lucas*, since the first event about which Plaintiff complains after the 2013 Incident was in February 2017. Pl. Resp. 5; Compl. ¶ 31. This lengthy time gap negates any inference that the alleged acts constitute a single hostile work environment. *Lucas*, 367 F.3d at 727; *Partipilo v. Jewel Food Stores, Inc.,* No. 16 C 4450, 2017 WL 5989776, at *2 (N.D. Ill. Dec. 4, 2017) (refusing to find an ongoing hostile work environment when there was at least a three-year period without harassment); *Arce v. Chicago Transit Auth.*, No. 14 C 102, 2015 WL 3504860, at *5 (N.D. Ill. June 2, 2015), *aff'd,* No. 16-2882, 2018 WL 3013377 (7th Cir. June 15, 2018) (dismissing hostile work environment claims and rejecting application of continuing violation doctrine when alleged hostile acts were spaced two years apart); *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 712 (7th Cir. 2017) (refusing to consider alleged incidents occurring two or three years before later incidents of alleged harassment and collecting

cases supporting the proposition that "the length of time between incidents has been a consistent limiting factor" in this Circuit's jurisprudence).[1]

The third *Morgan* factor – whether the alleged acts were perpetrated by the same managers – further undermines Plaintiff's continuing violation argument. The replacement of Chief Patterson by Chief Hyland in 2016 constituted an intervening act by the employer, which separates the 2013 Incident and Plaintiff's subsequent allegations into two, unrelated hostile work environment claims. *See Sanford v. Walgreen Co.*, No. 08-CV-6325, 2009 WL 3152795, at *5-6 (N.D. Ill. Sept. 23, 2009) (dismissing untimely claims that were allegedly perpetrated at different stores and by different managers). In *Isaacs v. Hill's Pet Nutrition, Inc.*, 485 F.3d 383, 386 (7th Cir. 2007), Isaacs alleged that she was harassed by two different groups of coworkers, but that the managers to whom she complained did nothing. The Seventh Circuit noted that if Isaacs had "moved from one plant to another, where a different set of managers made decisions about working conditions," she would have experienced different hostile environments for purposes of *Morgan*. *Id*. However, since the same managers controlled how the employer addressed problems in the workplace, there was only one employment practice, and all of Isaacs' alleged events could be considered. *Id*.

Here, in contrast to *Isaacs*, the decisions concerning Ross' working conditions in 2013 and in 2017 were made by two different supervisors, creating a break in any continuing hostile environment claim as described in *Isaacs* and *Sanford*. As such, Plaintiff's alleged hostile work environment claims must be regarded as two different hostile environments – one based on his allegations about the 2013 Incident that occurred under Chief Patterson (which is untimely) and

---

[1] Further, Plaintiff offers no response to Defendants' argument that the 2013 Incident cannot be considered because he *expressly stated in his EEOC Charge* that the incident was not the subject of his Charge and was therefore outside its scope. Compl. Ex. A; Def. Mem. 9-10. This reason alone is sufficient to reject the 2013 Incident as part of a single hostile work environment.

the other based on the incidents he complains of that occurred under Chief Hyland (which is timely). Indeed, the *only* common thread between the 2013 and 2017-18 incidents is that Kara was involved in both. But the identity of the alleged harasser is not relevant to whether the untimely acts may be considered part of a "single chain or course of conduct" so as to defeat the statute of limitations. Indeed, the identity of the alleged harasser is irrelevant to whether the allegations form a single unlawful practice because "the employer—not its employees—must comply with Title VII." *Milligan-Grimstad*, 877 F.3d at 712 (citing *Isaacs*, 485 F.3d at 386).

*Lapka v. Chertoff*, 517 F.3d 974 (7th Cir. 2008), cited by Plaintiff, is distinguishable from this case and does not support application of the continuing violation doctrine. In *Lapka*, the plaintiff was raped by a coworker in June 2002. She learned that her employer had closed its investigation into the assault without taking any action against the alleged perpetrator, Garcia, on March 24, 2003; Garcia's brother visited the building where Lapka worked on May 15, 2003; May 22, 2003; and June 12, 2003; and Garcia visited on August 22, 2003. *Id.* at 982. Lapka alleged that all these events were components of her harassment claim, even though most of them were untimely. The Seventh Circuit agreed with Lapka, reasoning that while the alleged rape was not actionable by itself, the employer's failure to investigate the assault or take steps to protect Lapka formed a single alleged hostile environment. *Id.*

*Lapka* is distinguishable from this case in two key respects. First, the more than three-year time gap between the 2013 Incident and the next incident about which Plaintiff complains is far longer than the nine-month time gap in *Lapka*. As discussed above, such a lengthy time gap renders application of the continuing violation doctrine inappropriate. Second, unlike Lapka's employer, Argonne investigated and took remedial action after Plaintiff complained about the 2013 Incident. Compl. ¶¶ 26-28. Argonne's remedial steps constitute an "intervening action,"

which interrupted any alleged hostile work environment. *Morgan*, 536 U.S. at 118 (there is no continuing violation if employer had taken "certain intervening action" after the first act such that the second act "was no longer part of the same . . . claim"); *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1258–59 (11th Cir. 2003) (intervening action by the employer meant the co-worker's conduct was no longer part of the plaintiff's hostile work environment claim); *Fairley v. Potter, No.* C–01–1363 VRW, 2003 WL 403361 (N.D. Cal. Feb. 13, 2003) (the employer's adequate handling and investigation of the plaintiff's complaint constituted an intervening action).

Accordingly, the continuing violation doctrine cannot be applied here to bring together all of Plaintiff's complained-of actions in a single hostile environment claim. Plaintiff has failed to respond to Defendants' arguments that the events occurring in 2017 and 2018, on their own, do not rise to the level of a materially adverse employment action. Def. Mem. 9-11. Accordingly, he has failed to plead an adverse employment action required to state discrimination, harassment, or retaliation claims. As such, Counts I-III and V-VII must be dismissed.

### C. Plaintiff's Failure to Respond to Defendants' Retaliation Arguments Constitutes Waiver of any Argument against Dismissal

As explained more fully in Defendants' Memorandum, there is a more than three-year gap between Plaintiff's only allegation of protected activity in 2013 and the first allegedly retaliatory act in February of 2017.[2] Plaintiff does not contest that a three-year gap between his protected activity and the alleged adverse employment action is too long, as a matter of law, to maintain a Title VII retaliation claim. His failure to make any argument on this point constitutes

---

[2] Plaintiff incorrectly asserts in his Response that "Defendants argue that Plaintiff failed to allege that he engaged in protected activity, that he suffered an adverse employment action and that there is a causal link between the two." Pl. Resp. at 4. Defendants base their dismissal argument solely on the lack of causal link between the protected activity and alleged adverse employment action.

2586149.3

waiver of the argument. *Jones*, 2012 WL 4361500, at *7 (collecting cases); *Kirksey*, 168 F.3d at 1041-42.

Plaintiff mistakenly assumes that a complaint that complies with Rules 8(a)(2) is immune from a motion to dismiss. Pl. Resp. 4. Rule 8(a)(2) specifies the conditions of formal adequacy of pleading. It does not specify the conditions of its substantive adequacy (i.e. its legal merits). *Kirksey*, 168 F.3d at 1041; *see also Cty. of McHenry,* 438 F.3d at 818. By not responding to Defendants' legal arguments and simply asserting that he has complied with Rule 8(a)(2), Plaintiff has confused substance with form and forfeited his right to respond to Defendants' legal grounds for dismissing Counts II and VI.

### D. Plaintiff Has Also Waived any Argument against Dismissal of His Age Discrimination Claims

As explained in Defendants' Memorandum, Counts III and VII must be dismissed because Plaintiff failed to state a claim for age discrimination under the ADEA (29 U.S.C. §§ 621-634 (1967)) or IHRA (775 ILCS 5/2-101). Plaintiff's complete failure to respond to this argument constitutes a waiver of any such arguments. *Bonte,* 624 F.3d at 466; *Cty. of McHenry,* 438 F.3d at 817-18; *see also Kirksey,* 168 F.3d at 1041 ("If [judges] are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning. An unresponsive response is no response"). Plaintiff has failed to offer any legal basis to support Counts III and VII, and those counts must therefore be dismissed.

## II. PLAINTIFF'S TORT CLAIMS ARE PREEMPTED, UNTIMELY AND/OR FAIL TO STATE A CLAIM

### A. Plaintiff's Tort Claims Are Preempted by the Illinois Human Rights Act

Plaintiff asserts that his tort claims are not "inextricably linked" to his harassment and discrimination claims because the tort claims "are derived from facts comprising of long term and widespread conduct by Kara and are not solely derived from a single set of facts based on harassment and discrimination." Pl. Resp. 8. Plaintiff does not explain what independent facts he is relying on to support his tort claims, which is unsurprising since there are none. A fair reading of the Complaint makes clear that Plaintiff's tort claims are supported by factual allegations identical to those supporting his harassment, discrimination, and retaliation claims, and as such must be dismissed. *See*, *e.g*., *Quantock v. Shared Mktg. Servs., Inc.,* 312 F.3d 899, 905 (7th Cir. 2002); *Geise v. Phoenix Co. of Chicago.,* 159 Ill. 2d 507, 516–17 (1994); *Freeman v. Holy Cross Hosp.,* No. 10 C 4157, 2011 WL 1559208, at *2 (N.D. Ill. Apr. 25, 2011).

In *Geise*, the plaintiff argued that her sexual harassment claims against the supervisor who allegedly harassed her were distinct from her negligent hiring and retention claims against her employer. 159 Ill. 2d at 516. Reviewing the pleadings, the Illinois Supreme Court found that, "Absent the allegations of sexual harassment, Geise would have no independent basis for imposing liability on her former employer under the facts present here. [The negligent hiring and negligent retention claims] depend on the prohibitions against sexual harassment for their viability." *Id*. at 517. The Court also noted that Geise's argument against preemption contradicted her position that the complained-of actions violated Title VII (and would have also violated the IHRA had she asserted an IHRA claim). Therefore, the Court held that the tort claims were preempted by the IHRA. *Id*. at 518-19.

9

The situation here is identical to that in *Geise*. Plaintiff would have no claims without reference to the IHRA, which prohibits harassment, discrimination, and retaliation in employment. 775 ILCS 5/2-102; 775 ILCS 5/6-101; *see also Alexander v. Northeastern Ill. Univ.*, 586 F. Supp. 2d 905, 915 (N.D. Ill. 2008) (dismissing Illinois Whistleblower Act claim because it "would be a nullity" without reference to the IHRA) (quoting *Bell v. LaSalle Bank N.A.,* No. 03 C 607, 2005 WL 43178 (N.D. Ill. Jan. 10, 2005). Plaintiff's recitation of the same facts in the different sections of his Response to Defendants' Memorandum confirms this.

Also, as in *Geise*, Plaintiff's argument is contradictory because he relies on the same facts to support his tort claims as he does to urge the Court to apply the continuing violation doctrine so it may consider the 2013 Incident as a part of his harassment claims. It is untenable for Plaintiff to argue in one section of his Response that the facts support application of the continuing violation doctrine to bring all his claims into a single hostile work environment, and then later argue that those same facts support an independent basis for his tort claims. *Compare* Pl. Resp. 5-6 with Pl. Resp. 7-8. As such, Plaintiff's allegations make clear that his tort claims are inextricably linked to his alleged civil rights violations, and they are preempted by the IHRA. *Geise*, 159 Ill. 2d at 518-19.

### B. Plaintiff Cannot Rely on the Continuing Violation Theory to Save his Respondeat Superior Claim Based on an Untimely Intentional Infliction of Emotional Distress Claim[3]

Illinois "does not apply the continuing violation rule to 'a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing.'" *Hukic v. Aurora Loan Servs.,* 588 F.3d 420, 435 (7th Cir. 2009) (quoting *Rodrigue v. Olin Emps. Credit Union,* 406 F.3d 434, 443 (7th Cir. 2005)) (applying Illinois law). Moreover, a continuing

---

[3] Although Plaintiff's IIED claim is brought against Kara only (who has not yet been served), he seeks to hold Argonne liable for Kara's alleged conduct via his respondeat superior claim (Count IX).

10

violation "is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation." *Hyon Waste Mgmt. Servs., Inc. v. City of Chicago*, 214 Ill.App.3d 757, 763 (Ill. App. Ct. 1991). The Illinois Supreme Court has applied the continuing violation doctrine to Intentional Infliction of Emotional Distress ("IIED") cases, *e.g.*, *Feltmeier v. Feltmeier*, 207 Ill.2d 263, 276-83 (Ill. 2003). However, the doctrine is appropriately applied only where "the acts are continuous, by the same actor, and of a similar nature." *Pavlik v. Kornhaber*, 326 Ill.App.3d 731, 745 (Ill. App. Ct. 2001).

In *Hukic* the Seventh Circuit examined the dismissal of the plaintiff's defamation claim. 588 F.3d at 435. Hukic argued that under the continuing violation rule, a time-barred publication of an allegedly defamatory statement was rendered timely by subsequent, allegedly defamatory statements made within the limitations period. *Id*. The Seventh Circuit disagreed, finding that each publication was an independently actionable, discrete act. Accordingly, the court concluded that Hukic's claim "did not depend upon a longstanding or unbroken course of activity," as required under Illinois case law to warrant application of the continuing violation rule. It therefore affirmed the dismissal of the defamation claim. *Id*. at 436.

Here, as in *Hukic*, there was no "longstanding or unbroken course of activity," since Plaintiff alleges no unlawful events occurring between the 2013 Incident and February 2017. Compl. ¶¶ 25, 31. Further, Plaintiff does not allege continuing *unlawful acts*, but the *continuing ill effects* of the 2013 Incident. Indeed, Plaintiff complaints of Kara's alleged conduct in 2017 and 2018 due to the "seriousness of the previous incident in 2013," indicating that Plaintiff would not have felt "threatened" by these acts had the 2013 Incident not occurred. *Id*. ¶¶ 33, 38. Further, Kara's alleged conduct in 2017 and 2018 was not of the same nature as the alleged 2013 Incident, as required to make application of the continuing violation rule appropriate. *Id*. ¶¶ 31-

11

32, 36. Accordingly, since the IIED claim against Kara does not satisfy Illinois' requirements for application of the continuing violation doctrine, the respondeat superior claim may not lie against Argonne. *Hukic,* 588 F.3d at 436; *Hyon*, 214 Ill.App.3d at 763 (rejecting application of the continuing violation doctrine where any alleged damages from the defendant's act were the "continued ill effects" from a single alleged violation).

To the extent Plaintiff seeks to assert that his respondeat superior claim based on Kara's alleged tortious conduct in 2017 and 2018, the allegations are not sufficient to survive a motion to dismiss. Kara allegedly went out of his way trade onto Ross' shifts; stated on one occasion, "Let the games begin"; "harassed" him; and accused Ross of not timely ordering him his Maltese Cross. Compl. ¶¶ 31-32, 36. Plaintiff's conclusory allegations of "harassment" are not entitled to a presumption of truth on a motion to dismiss. *McCauley v. City of Chi.*, 671 F.3d 611, 616, 618 (7th Cir. 2011). As to the well-pleaded allegations, they are even weaker than cases where IIED claims were dismissed. *See*, *e.g*., *Miller v. Equitable Life Assurance Soc'y,* 181 Ill. App. 3d 954, 956-57 (Ill. App. Ct. 1989) (affirming dismissal of IIED claim notwithstanding plaintiff's allegations that her supervisors ridiculed her performance or ignored her entirely, denied her request for a transfer, refused to cooperate in recovering valuable property that was stolen from her, forbade her to call the police when another employee physically attacked her, encouraged other insurance agents' sexual harassment of her, suggested that she use sex to make her insurance sales and fired her when she reported other employees' fraudulent practices, and that her co-workers ignored her, called her a white racist and threatened her with physical harm); *Stokes v. John Deere Seeding Grp.,* No. 4:12-CV-04054-SLD-JAG, 2014 WL 859528, at *1, 4 (C.D. Ill. Mar. 5, 2014) (dismissing IIED claim where the plaintiff alleged that she had endured 12 incidents of intentional misconduct from a male coworker, including physical assaults and

12

demeaning comments, which led her to fear for her safety, and that John Deere management "intentionally disregarded" her complaints). Therefore, Plaintiff's respondeat superior claim must be rejected.

### C. Plaintiff's Negligent Retention Claim Fails

Plaintiff does not explain how he can maintain a negligent retention claim without allegations that Kara did anything to create a danger of harm, let alone that Kara physically injured him. Def. Mem. 14; Pl. Resp. at 8-9. Plaintiff also fails to cite any case law in support of his position. Plaintiff's lack of response constitutes waiver and the claim should be dismissed on this basis alone. *Bonte*, 624 F.3d at 466; *Kirksey,* 168 F.3d at 1041; *Jones*, 2012 WL 4361500, at *7.

Moreover, Plaintiff offers no explanation for how his allegation that Argonne knew or should have known of Kara's unfitness "at the time he was permitted [to] continue[] employment by Argonne *after the 2013 incident*" can be squared with the two-year statute of limitations period for tort claims. Def. Mem. 12. Plaintiff does not assert that his negligent retention could come within the ambit of the continuing violation rule. Such an argument would necessarily fail since Plaintiff's negligent retention claim is grounded on the premise that Argonne should have discharged Kara in 2013. Accordingly, the negligent retention claim is untimely and must be dismissed.

### III. PLAINTIFF'S CLAIMS AGAINST CHIEF HYLAND CANNOT STAND

As explained more fully in Defendants' Memorandum in Support of Their Motion to Dismiss, the Complaint violates Rule 8 by failing to put Chief Hyland on fair notice of the charges against him. Def. Mem. 15. Plaintiff does not respond to these arguments. Pl. Resp. at 10. The mere fact that some of Plaintiff's allegations involve Chief Hyland does not put him on

notice of what claims are brought against him. Requiring Chief Hyland to remain in this lawsuit as an individual defendant violates the procedural requirements of Rule 8. Accordingly, he must be dismissed from this lawsuit.

## CONCLUSION

Taking all allegations as true, Plaintiff's Complaint is nothing more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Plaintiff's Response does nothing to help save his Complaint, as it simply regurgitates the facts in the Complaint without any application of the law to those facts. Further, Plaintiff's repeated failure to respond to Defendants' arguments results in waiver of his right to oppose them. As such, Plaintiff's Complaint should be dismissed in its entirety with prejudice.

Respectfully submitted,

**UCHICAGO ARGONNE, LLC** and
**GEORGE HYLAND**


By: /s/Lindsey M. Marcus
 One of Their Attorneys

Jeff Nowak
jn@franczek.com
Lindsey M. Marcus
lmm@franczek.com
Erin K. Walsh
ekw@franczek.com
Franczek Radelet, P.C.
300 S. Wacker, Suite 3400
Chicago, IL 60606
Tel:  (312) 986-0300
Fax:  (312) 986-9192

Dated:  October 10, 2018

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that she caused a true and correct copy of the foregoing **DEFENDANTS UCHICAGO AGRONNE, LLC AND CHIEF GEORGE HYLAND'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT** to be filed with the Clerk of the Court using the Court's CM/ECF system, which will send electronic notification of such filing to the following counsel of record this 10th day of October, 2018:

> Daniel Q. Herbert
> Kelly A. Krauchon
> The Herbert Law Firm
> 206 S. Jefferson, Suite 100
> Chicago, IL 60661

/s/Lindsey M. Marcus