IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JIMMY ROSS, ) | |
|         Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-cv-04200 |
| ) | |
| UCHICAGO ARGONNE, LLC, ) | Magistrate Judge Jeffrey T. Gilbert |
| Fire Chief GEORGE HYLAND, ) | |
| Individually and in his Official Capacity, and ) | |
| Fireman RICHARD KARA, Individually and ) | |
| in his Official Capacity, ) | |
|         Defendants. ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS
UCHICAGO ARGONNE, LLC AND CHIEF GEORGE HYLAND'S
<u>MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

On December 10, 2018, this Court entered a Memorandum Opinion and Order [Dkt. 30] (the "Opinion") dismissing Plaintiff's Complaint against UChicago Argonne, LLC ("Argonne") and Fire Chief George Hyland ("Chief Hyland") without prejudice. Despite adding a handful of superficial allegations, Plaintiff's First Amended Complaint ("FAC") continues to suffer from the same fatal defects previously identified by this Court in the Opinion. Plaintiff's hostile work environment claim fails because the claim itself and his alleged harm remain speculative, and Plaintiff alleges no conduct that is sufficiently severe to state a claim. Plaintiff's discrimination and retaliation claims must be dismissed because the actions of which Plaintiff complains still do not constitute adverse employment actions. Plaintiff's tort claims remain untimely and preempted by the IHRA. Finally, the claims against Chief Hyland must be dismissed because Plaintiff still fails to specify which counts he is alleging against Hyland and because Hyland cannot be held individually liable for Plaintiff's Title VII, ADEA, or IHRA claims. Despite

1

being given a second bite at the apple, Plaintiff still fails to state a claim for relief. Accordingly, the FAC must be dismissed with prejudice.

## FACTUAL BACKGROUND[1]

Argonne and Chief Hyland assume the Court's familiarity with the allegations in Plaintiff's original Complaint and do not recite those allegations below. In the FAC, Plaintiff adds only a handful of new allegations. Specifically, Plaintiff added one sentence to Paragraph 31 and Paragraph 44, and added new Paragraphs 37-43, 45-51, 54-55, and 57-58. All of the remaining allegations, including each of the nine enumerated counts, remain the same. The substance of the new allegations is set forth below.

After Defendant Kara told Plaintiff "let the games begin" when Kara traded onto Ross's shift on or about February 10, 2017, Plaintiff communicated that comment to Chief Hyland. FAC ¶ 31. Altogether, "Chief Hyland received numerous forms of correspondence from Ross that communicated his concern over Kara's threatening behavior." *Id.* ¶ 39.

On or about May 2, 2017, Ross ordered Kara to go home after holding overtime for another firefighter until 9:00 p.m., but Kara disregarded the order and decided to sleep overnight. *Id.* ¶ 40. Because he felt "threatened and uneasy" given Kara's presence, however, Plaintiff did not get any sleep that night. *Id.* Similarly, on or about June 3, 2017, June 29, 2017, August 10, 2017, September 16, 2017 and September 18, 2017, Kara worked overtime on Plaintiff's shift, and Plaintiff had difficulty sleeping. *Id.* ¶ 41-46.

On or about November 8, 2017, Chief Hyland provided Plaintiff with Plaintiff's performance appraisal, which included "negative goals and comments of an insulting nature; such as, 'as part of your current pursuit of a degree, purchase and read one book on grammar to

---

[1] The facts set forth in this Memorandum are presumed to be true solely for purposes of Defendants' Motion to Dismiss.

help keep your correspondence error-free.'" *Id.* ¶ 47. However, in the very same performance appraisal, Plaintiff "was noted as 'always respectful of every member of the department … is mindful of all Lab safety procedures and initiatives, and ensures the safety of his members at all times.'" *Id*. ¶ 50. On or about December 9, 2017, Chief Hyland gave Plaintiff a verbal reprimand for sending an email rather than making a phone call, but no other Battalion Chiefs were reprimanded for sending emails in the same situations, which they do "all of the time." *Id.* ¶ 51. Chief Hyland also made unspecified "constant condescending comments." *Id.* ¶ 48. On "numerous occasions," Chief Hyland told Plaintiff that "he should just retire." *Id.* ¶ 58.

On or about January 24, 2018, Chief Hyland "excluded [Plaintiff] from meetings that all of the other Battalion Chiefs were notified of and included in." *Id*. ¶ 54. Several months later, on or about April 5, 2018, Chief Hyland sent an email to Plaintiff in which he suggested that Plaintiff "needed further training" and accused Plaintiff of "inaccurately making time entries for his shift," but no other Battalion Chiefs "received condescending comments in reference to any minor errors in time entries," nor were they told they "needed further training." *Id.* ¶ 55. Shortly thereafter, on or about April 7, 2018, Plaintiff sent an email to Kim Mandekich at Argonne, stating Plaintiff's belief that Chief Hyland "continued to harass, discriminate and retaliate against him because he does not treat him the same as the other three Battalion Chiefs, who are all non-African Americans." *Id.* ¶ 57.

**ARGUMENT**

I.  **LEGAL STANDARD**

Fed. R. Civ. P. 12(b)(6) mandates dismissal of a complaint that fails to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must provide the defendant with fair notice of the basis of Plaintiff's claims, and those claims must be facially

3

plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). A plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In evaluating the sufficiency of a complaint, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," nor do legal conclusions stated as factual allegations. *Iqbal*, 556 U.S. at 678. Plausibility "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*.

## II. PLAINTIFF'S FEDERAL AND STATE HARASSMENT, DISCRIMIMATION, AND RETALIATION CLAIMS MUST BE DISMISSED[2]

### A. The FAC's New Allegations Do Not Salvage Plaintiff's Hostile Work Environment Claim

In Count I of the FAC, Plaintiff claims that he was subject to a hostile work environment based on his race. This Court dismissed Plaintiff's hostile work environment claim in the original Complaint for three separate reasons: (1) Plaintiff alleged no facts to support an inference that Chief Hyland or Argonne knew about Firefighter Kara's "let the games begin" comment in 2017 and Argonne appropriately disciplined Kara for his 2013 actions (Opinion at 9-10); (2) Plaintiff's claim and the alleged harm suffered was only speculative (*Id.* at 10); and (3) "perhaps most crucially," Plaintiff's allegations, including the 2013 incident, the 2017 comment, the Maltese Cross accusation and Kara's continuing attempt to trade onto Plaintiff's shift, did not "meet[] the severity requirement" to make out a hostile work environment claim (*Id.* at 10-12). The new allegations in the FAC attempt to remedy the first two deficiencies but fail to do so, and the FAC does nothing to remedy the third and most crucial reason relied upon by the Court in dismissing this claim.

---

[2] Illinois courts apply the federal Title VII and ADEA framework to IHRA claims, and so the federal and state harassment, discrimination and retaliation claims need not be addressed separately. *See Volling v. Kurtz Paramedic Servs*., Inc., 840 F.3d 378, 383 (7th Cir. 2016).

4

To state a hostile work environment claim under Title VII or the IHRA, Plaintiff must allege that: (1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment unreasonably interfered with his work performance; and (4) there is a basis for employer liability. *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 476 (7th Cir. 2004). Plaintiff must plead facts that his "workplace is permeated with discriminatory intimidation, ridicule, and insult … sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.* 510 U.S. 17, 21 (1993) (internal quotation marks omitted). The court must consider "the frequency or severity of conduct, whether it is threatening and/or humiliating or merely offensive, and whether the harassment unreasonably interferes with an employee's work." *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 645 (7th Cir. 2005). To be actionable, an allegedly hostile work environment must qualify as "hellish." *Id.; see also Ford v. Minteq Shapes & Servs., Inc.*, 587 F.3d 845, 847 (7th Cir. 2009) (holding that conduct was not severe or pervasive where coworker called plaintiff a "gorilla").

First, despite adding allegations that Chief Hyland knew about Kara's 2017 "let the games begin" comment, Plaintiff still fails to plead a basis for employer liability because Plaintiff has not alleged that Kara engaged in any behavior even remotely as egregious as the 2013 incident. *See Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1049 (7th Cir. 2000) ("[T]he question is not whether the punishment was proportionate to [the] offense but whether [the employer] responded with appropriate remedial action reasonably likely under the circumstances to prevent the conduct from recurring."); *see also Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 977-78 (7th Cir. 2004) (holding that the employer had "satisfied its obligation to maintain a harassment-free work environment" because its "response to [the plaintiff's]

5

complaint was reasonable under the circumstances as then existed") (internal quotation marks omitted).

Second, the FAC still fails to allege facts to push the alleged hostile work environment and Plaintiff's alleged harm past the realm of pure speculation. As noted in the Opinion, since Plaintiff alleged in the original Complaint that he had been using his sick time to avoid Kara and had only worked one shift with him (and only minor incidents occurred), Plaintiff alleged only speculative harm from potential future harassment. *Id*. at p. 10. In the FAC, Plaintiff includes new allegations that in May 2017, Kara decided to sleep overnight rather than go home after holding an overtime shift until 9:00 p.m., and twice in June 2017, once in August 2017 and twice again in September 2017, Kara worked overtime on Plaintiff's shift. (FAC ¶¶ 40-43, 45-46). Plaintiff also includes new allegations that he was unable to sleep on three of these occasions because he didn't know what Kara might do to him while he was sleeping. (FAC ¶¶ 40, 45-46). Taking these as true, Kara still has worked on only six shifts with Plaintiff since 2013 and the FAC provides no new allegations regarding any other incidents that occurred or any conduct by Kara during these shifts. Rather, Plaintiff's allegations that he cannot sleep because Kara's presence makes him uneasy and because he doesn't know "what Kara *might* do to him while he was sleeping" (emphasis added) only underscore that Plaintiff alleges only speculative harm at best. (Opinion at 10). The new allegations in the FAC do not bring Plaintiff's hostile work environment claim above the speculative level, and it must be dismissed. *See Moore-Powell v. City of Chicago*, 2014 WL 296028, at *3 (N.D. Ill. Jan. 27, 2014) (granting a motion to dismiss the plaintiff's hostile work environment claim, in part, because "[t]he allegations in the complaint . . . suggest that [the plaintiff's] fear of retaliation or harm at the time of her transfer . . . were the result of speculation on her part and were entirely without any reasonable basis").

6

Finally – and, again, "perhaps most crucially" (Opinion at 10) – the FAC still fails to allege facts to satisfy the severity requirement to plead a viable hostile work environment claim. As stated above, Plaintiff includes allegations in the FAC that Kara worked on a total of six shifts with him in 2017, and that Plaintiff had difficulty sleeping during some of those shifts because he didn't know what Kara might do. The FAC does not contain <u>any</u> further allegations of alleged conduct by Kara during those six shifts or by anyone else at Argonne that would support a hostile work environment claim. Thus, Plaintiff is left with the conduct that formed the basis of his failed claim in the original Complaint: the 2013 incident, Kara's 2017 'let the games begin' comment, Kara's attempt to trade onto Plaintiff' shift, and Kara's accusation that Plaintiff did not order him a Maltese Cross for his uniform. (Opinion at 11-12).[3] As this Court has already held, these incidents do not constitute the type of severe conduct that is sufficient to survive a motion to dismiss. Likewise, other courts have found conduct even more serious than the conduct alleged in the FAC to fail the "severe or pervasive" standard.[4] *See, e.g., Winters v. Hamos*, 2018 WL 3458266, at *4-5 (N.D. Ill. July 18, 2018) (granting motion to dismiss hostile work environment claim where plaintiff "allege[d] that the Defendant denied him training, failed to give him performance reviews or gave him baseless poor reviews, gave him an excessive workload, denied his Flex Time, and suspended him for seven days," as well as made discriminatory comments); *Triplett v. Starbucks Coffee*, 2011 WL 3165576, at *4-5 (N.D. Ill. July 26, 2011) (granting motion to dismiss hostile work environment claim).

For all of these reasons, the FAC does not state a claim for hostile work environment

---

[3] The 2013 Incident is both beyond the scope of Plaintiff's EEOC Charge and untimely. (*See* Dkt. No. 17 at 9-10).

[4] To the extent Plaintiff argues that his new allegations regarding Chief Hyland also support his hostile work environment claim, those allegations are not sufficiently severe or pervasive so as to amount to an actionable hostile work environment claim.

harassment, and this Court should dismiss it with prejudice.

### B. Plaintiff's Race Discrimination Claim Fails Because He Has Not Suffered Any Adverse Employment Action

This Court dismissed Plaintiff's race discrimination claim in the original Complaint because Plaintiff's voluntary use of his sick time to avoid Kara did not constitute an adverse employment action. (Opinion at 13-15). In the FAC, Plaintiff includes new allegations that Chief Hyland told Plaintiff that if he denied Kara a shift trade again without a sufficient operational justification, he would be written up for insubordination and unsatisfactory job performance. (FAC ¶¶ 43-44). Plaintiff also includes new allegations that Chief Hyland: (1) gave him a performance appraisal that included "negative goals and comments of an insulting nature;" (2) made unspecified "condescending comments;" (3) took away Plaintiff's responsibility for turnout gear; (4) gave Plaintiff a verbal reprimand; (5) excluded Plaintiff from a meeting; and (6) sent Plaintiff an email suggesting that he needed further training and that he made inaccurate time entries for his shift. (FAC ¶¶ 47-49, 51, 54-55).[5] However, none of these new allegations rise to the level of an adverse employment action, and Plaintiff's race discrimination claim remains fatally deficient.

An "adverse job action must be materially adverse, meaning more than a mere inconvenience or an alteration of job responsibilities" and which "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 510-11 (7th Cir. 1999). Here, none of Plaintiff's new allegations amount to a "significant change in his employment status or in his benefits." (Opinion at 14). First, the

---

[5] It is unclear if these allegations are supposed evidence of race discrimination, age discrimination, or retaliation, but they fail to constitute adverse actions in all respects.

allegations regarding Chief Hyland's statements that he would write up Plaintiff for insubordination do not constitute adverse actions because no such write-up has occurred to date – it is just a "threat of corrective action" and entirely speculative. (Opinion at 17-18). Second, Plaintiff does not actually allege that he received a negative performance evaluation; rather he contradictorily pleads that his performance evaluation included "negative goals and comments of an insulting nature" but also emphasized his positive characteristics and job performance. (FAC ¶¶ 47, 50). Regardless, Plaintiff's performance evaluation cannot rise to the level of an adverse action because "not everything that makes an employee unhappy is an actionable adverse action, and . . . negative employee evaluations are not by themselves actionable adverse employment actions." *Ribando*, 200 F.3d at 511 (internal quotation marks omitted). The same holds true for the alleged "verbal reprimand," "condescending comments[6]" and email suggesting that Plaintiff needed further training – none changed Plaintiff's employment status or benefits. Finally, with respect to taking away Plaintiff's responsibility for turnout gear and his exclusion from a single meeting, these do not qualify as significantly diminished material responsibilities, as opposed to a "mere inconvenience or an alteration of job responsibilities." *Id.* at 510-11; *see also Nichols v. S. Ill. Univ. Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007) ("A [m]aterially adverse employment action is something 'more disruptive than a mere inconvenience or an alteration of job responsibilities'"); *Princeton v. Lowe's Home Ctrs., Inc.*, 2009 WL 3824610 at *4 (N.D. Ill. Nov. 16, 2009).

In short, Plaintiff still does not adequately allege an adverse employment action. Accordingly, Plaintiff's race discrimination claim again must be dismissed.

---

[6] Plaintiff provides no detail regarding the "condescending comments" but this allegation appears to refer to the "comments of an insulting nature" on Plaintiff's performance appraisal. Since this appraisal would not be made public or provided to the other firefighters, Plaintiff fails to show how it could "diminish the department member's [*sic*] respect for [Plaintiff]." (FAC ¶ 48).

### C. Plaintiff's Retaliation Claim Remains Defective Because He Did Not Suffer Any Adverse Employment Action

This Court dismissed Plaintiff's retaliation claim in the original Complaint because he failed to establish a causal link between his engaging in protected activity and any adverse action taken against him, and also because he failed to adequately plead an adverse employment action at all. (Opinion at 15-18). In the FAC, Plaintiff makes additional allegations regarding his post-2013 protected activity (FAC ¶¶ 31, 38-39, 57) in order to try and establish a causal link, but he still fails to establish any adverse action.

To adequately plead a retaliation claim, Plaintiff must allege that he engaged in protected activity, that he suffered an adverse employment action, and that there is a causal link between the two. *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016). Here, Plaintiff's retaliation claim fails for the same reason as his race discrimination claim – Plaintiff has not alleged an adverse employment action. *See* Section II(B) and footnote 5, *supra*. None of the new conduct alleged by Plaintiff relating to Chief Hyland, which amounts to threats of corrective action, mild corrective action, or insignificant changes in job responsibilities, rises to the level of an adverse employment action. (Opinion at 16-18). Plaintiff's retaliation claim, therefore, again must be dismissed.

### D. Plaintiff's Age Discrimination Claim Fails Because The FAC Does Not Sufficiently Allege Any Adverse Employment Action Or Causation

Plaintiff's age discrimination claim in his original complaint failed because he offered only a formulaic recitation of the elements of an ADEA violation without making any causal connection between his age and any adverse employment action. (Opinion at 18-19). The same holds true of the FAC.

To state a claim for age discrimination under the ADEA, Plaintiff must allege that his age

was the "but-for" factor in the alleged discriminatory conduct. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009) (rejecting mixed motive applicability in ADEA discrimination claims and holding that a plaintiff "must prove, by a preponderance of the evidence, that age was the 'but-for' cause [i.e., the only cause] of the challenged adverse employment action"); *see also Joren v. Napolitano*, 633 F.3d 1144, 1146 (7th Cir. 2011) (affirming dismissal of age discrimination claim where complaint failed to suggest that plaintiff's age played any role in her treatment).

The FAC fails to include any allegations whatsoever that Plaintiff was discriminated against on the basis of his age. Rather, Counts III and VII make the identical conclusory allegations as the original Complaint. (FAC ¶¶ 74, 94). The only other allegations that could even possibly support an age discrimination claim relate to Plaintiff's treatment as compared to the other Battalion Chiefs. (FAC ¶¶ 51, 54-57). However, Plaintiff makes no allegation that the other Battalion Chiefs are younger than him, does not relate these allegations to age at all, and in fact focuses on the <u>race</u> of the other Battalion Chiefs, not their age. (FAC ¶ 57). Similarly, Plaintiff alleges that Chief Hyland "on numerous occasions has told [Plaintiff] that he should just retire" (FAC ¶ 58), but these alleged comments are ambiguous and do not refer directly to Plaintiff's age. At best, this is a stray remark that cannot support a claim for age discrimination. *See Gadsby v. Norwalk Furniture Corp.*, 71 F.3d 1324, 1330 (7th Cir. 1995) (holding that a manager's comment to a "63-year-old sales representative that 'if he didn't retire this time, he would probably be let go'" was insufficient to show age discrimination because "the alleged comment is too ambiguous regarding age" because "it could mean that the sales representative needed to be terminated for a legitimate reason, but [the employer] preferred that he simply retire"); *see also Harris v. Franklin-Williamson Human Servs., Inc.*, 97 F. Supp. 2d 892, 905

11

(S.D. Ill. 2000). In short, Plaintiff makes no allegation that he was treated less favorably than similarly-situated workers of a different age, which is fatal to his ADEA claim.

Finally, as set forth above, Plaintiff fails to adequately plead an adverse employment action that would support his ADEA claim. *See* Section II(B) and footnote 5, *supra*. None of the conduct of which Plaintiff complains constitutes an adverse employment action under the ADEA, so his claim fails for that independent reason as well.

As with the original complaint, the ADEA count in the FAC appears to be thrown in simply because Plaintiff is over age 40; without more, Plaintiff's ADEA claim must be dismissed.

### III. PLAINTIFF'S STATE LAW TORT CLAIMS MUST BE DISMISSED

This Court dismissed Plaintiff's tort claims because they are inextricably linked to Plaintiff's discrimination and hostile work environment claims. (Opinion at 19-22). In turn, this Court dismissed Plaintiff's respondeat superior claim because there was no underlying tortious act to support it. (Opinion at 22). The FAC does <u>nothing</u> to address these deficiencies; rather the tort counts continue to incorporate all the previous allegations in the FAC and provide no allegations of tortious conduct that fall outside the alleged civil rights violations. Further, these claims are untimely, as they are based on conduct that is more than two years old. As such, Counts IV, VIII, and IX must be dismissed.

#### A. Plaintiff's Tort Claims Are Preempted by the IHRA

All of the facts underlying Plaintiff's intentional infliction of emotional distress ("IIED") and negligent retention claims are the same as those supporting his civil rights claims. As such, these counts are inextricably linked to Plaintiff's civil rights claims and are preempted by the IHRA. (Opinion at 19-22); *Alexander v. Ne. Ill. Univ.*, 586 F.Supp.2d 905, 914 (N.D. Ill. 2008);

*Geise v Phoenix Co. of Chi., Inc.*, 159 Ill.2d 507, 516-17 (1994). As with the original Complaint, the tort claims in the FAC incorporate all of Plaintiff's allegations of discrimination. (FAC ¶¶ 77, 97). The FAC does not provide any separate allegations that would support an IIED claim other than those which form the basis of his discrimination, retaliation, and hostile work environment claims. Similarly, it is Argonne's alleged failure to prevent unlawful discrimination and harassment in the workplace, and nothing else, which forms the basis of Plaintiff's negligent retention claim. Thus, when one disregards Plaintiff's discrimination allegations, it "takes the air out of the case" and nothing is left at all. *Sanlap v. LaSalle Bank, FSB*, 345 F.3d 515, 519 (7th Cir. 2003). Plaintiff's tort claims are preempted by the IHRA and must be dismissed.

### B. Plaintiff's Tort Claims Are Untimely

The statute of limitations for claims for IIED and negligent retention claims is two years. 735 ILCS 5/13-202; *Protich v. Will Cnty. Health Dept.*, 2002 WL 31875461 at *1 (N.D. Ill. Dec. 24, 2002). The FAC's allegations reveal that Plaintiff relies on the 2013 Incident as the basis for his tort claims, which renders them time-barred. As to the IIED claim, the only allegation that could even come close to constituting "extreme and outrageous" conduct is the 2013 incident, which is unquestionably untimely. The FAC does not allege any subsequent conduct by Kara other than his attempts to trade onto Plaintiff's shift, his "let the games begin" comment and his accusation that Plaintiff failed to order him the Maltese Cross for his uniform, which are not sufficient to establish an IIED claim. As to the negligent retention claim, Plaintiff's allegation that Argonne knew or should have known of Kara's unfitness "at the time he was permitted continued employment by Argonne *after the 2013 incident*" makes clear that this claim is time-barred.[7] (FAC ¶ 99 (emphasis added)); *Jackson v. Marion Cnty.*, 66 F.3d 151, 153 (7th Cir.

---

[7] Moreover, Plaintiff fails to allege any injury caused by Kara *after* the 2013 incident, and the proximate cause of a plaintiff's injury on a negligent retention claim is the employer's negligence in retaining the

1995) ("[A] plaintiff can plead himself out of court by alleging facts which show that he has no claim[.]"). Both claims are time-barred and should be dismissed for that reason as well.

### C. Plaintiff Cannot Maintain A Respondeat Superior Claim

As with Plaintiff's original Complaint, Plaintiff fails to state a respondeat superior claim because, since his IIED and negligent retention claims must be dismissed, there is no underlying tortious act to support that claim. (Opinion at 22). Without a surviving tort claim, the respondeat superior claim fails because it is not an independent cause of action. *Simon v. Nw. Univ.*, 183 F.Supp.3d 908, 919 (N.D. Ill. 2016). Further, the claim must be dismissed for the independent reason that Plaintiff fails to allege that the alleged tortfeasor (whether it be Chief Hyland or Kara) committed any tort while acting within the scope of his employment, specifically that they were furthering or believed that they were furthering Argonne's interests by engaging in the allegedly wrongful acts. *See Hunter v. Allis-Chalmers Corp., Engine Div.*, 797 F.2d 1417, 1421-22 (7th Cir. 1986).

### IV. PLAINTIFF'S CLAIMS AGAINST CHIEF HYLAND MUST BE DISMISSED

Despite the Court's admonition in the Opinion (p. 22-23), Plaintiff's FAC *still* fails to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," as required by Federal Rule of Civil Procedure 8 because it fails to specify which claims Plaintiff brings against Chief Hyland in his individual or official capacity. *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007); *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). None of the counts in the FAC are labeled as being brought against Chief Hyland or even make allegations against him; indeed, the

---

employee, not the employee's wrongful act. *See Young v. Lemons*, 266 Ill. App.3d 49, 52 (1st Dist. 1994).

language in all of the counts instead focuses on either "Argonne" or "Defendant Richard Kara." Accordingly, Plaintiff's FAC fails under Rule 8.

Moreover, the FAC mirrors the original Complaint in that it does not state a claim against Chief Hyland in his individual capacity because "a supervisor cannot be held individually liable for claims asserted under Title VII, the ADEA, or the IHRA." (Opinion at 23 (citing cases)). Any such claims against Chief Hyland in the FAC, therefore, must be dismissed.

## V.  DISMISSAL SHOULD BE WITH PREJUDICE

Dismissal of the FAC with prejudice is appropriate because, having failed in his second bite at the apple, any further amendment by Plaintiff would be futile. *See, e.g., Marijan v. Univ. of Chi.*, 2018 WL 6604967, at *7 (N.D. Ill. Dec. 17, 2018) ("We do agree with the University that plaintiff has had a second bite at the apple and has failed to rectify the deficiencies we noted when we dismissed plaintiff's first complaint. As a result, our dismissal of plaintiff's Amended Complaint is now with prejudice"); *see also Douglas v. Univ. of Chi.*, 619 F. App'x 556, 557-58 (7th Cir. 2015); *Pastoriza v. Keystone Steel & Wire*, 2015 WL 8490902, at *7 (C.D. Ill. Dec. 10, 2015). Despite this Court's thorough discussion of the Complaint's deficiencies in the Opinion, the FAC either fails to address these deficiencies at all or fails to correct them such that Plaintiff states a claim upon which relief may be granted.

## VI.  CONCLUSION

For the foregoing reasons, Defendants UChicago Argonne, LLC and Chief Hyland respectfully request that the Court grant their Motion to Dismiss Plaintiff's First Amended Complaint with prejudice and award all other remedies it deems appropriate and just.

[Signature follows on next page]

15

        Respectfully submitted,

        UCHICAGO ARGONNE, LLC, and
        GEORGE HYLAND

        By:     /s/ *Todd M. Church*
                One of Their Attorneys

Jeff Nowak
Todd M. Church
Littler Mendelson, P.C.
321 N. Clark St., Suite 1000
Chicago, IL 60654
312-372-5520

Dated: March 15, 2019

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that he caused a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANTS UCHICAGO AGRONNE, LLC AND CHIEF GEORGE HYLAND'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** to be filed with the Clerk of the Court using the Court's CM/ECF system, which will send electronic notification of such filing to the following counsel of record this 15th day of March, 2019:

>Daniel Q. Herbert
>Kelly A. Krauchon
>The Herbert Law Firm
>206 S. Jefferson, Suite 100
>Chicago, IL  60661

>/s/ *Todd M. Church*
>Todd M. Church

FIRMWIDE:163096048.1 101582.1006