IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JIMMY ROSS, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-cv-04200 |
| ) | |
| UCHICAGO ARGONNE, LLC and ) | Magistrate Judge Jeffrey T. Gilbert |
| Fire Chief GEORGE HYLAND, ) | |
| Individually and in his Official Capacity, ) | |
| ) | |
|     Defendants. ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

This Court has previously dismissed two complaints filed by Plaintiff for failure to state a claim and issued detailed opinions relating to each. *See* December 10, 2018 Memorandum Opinion and Order [Dkt. 30] and August 5, 2019 Memorandum Opinion and Order [Dkt. 46]. Despite this Court providing Plaintiff with an opportunity to file a Second Amended Complaint ("SAC") and despite Plaintiff's scaling back the causes of action asserted against Defendants, Plaintiff still fails to adequately state a claim for a hostile work environment or retaliation.

The SAC's few new allegations do not cure the fatal defects previously identified by this Court. Plaintiff's hostile work environment claim fails because Plaintiff alleges no conduct that is sufficiently severe or pervasive to state a claim. Plaintiff's retaliation claims must be dismissed because the actions of which Plaintiff complains still do not constitute adverse employment actions. Finally, Counts I and II against Chief Hyland also must be dismissed because Hyland cannot be held individually liable for Plaintiff's Title VII claims. Accordingly, the SAC must be dismissed with prejudice.

1

**FACTUAL BACKGROUND[1]**

Defendants assume the Court's familiarity with the allegations in Plaintiff's original Complaint and First Amended Complaint ("FAC") and do not recite those allegations. In the SAC, Plaintiff has included additional allegations as set forth below.

First, Plaintiff alleges that he has been the only African-American member of the Argonne Fire Department since 1997. SAC ¶ 1. Second, Plaintiff alleges that Defendant Argonne is insincere about its commitment to equal employment opportunity and diversity. SAC ¶¶ 24-25. Third, Plaintiff makes a series of allegations regarding harassment by his co-worker Richard Kara that occurred at an entirely different employer (the Richton Park Fire Department) in the early 2000's and incidents that occurred at Argonne in 2013, and makes allegations regarding his reports to Argonne with respect to the same. SAC ¶¶ 26-38. Fourth, Plaintiff adds an allegation with respect to the alleged "let the games begin" comment by Kara that Plaintiff viewed that statement as "a warning that Kara's racial harassment would begin again." SAC ¶ 41. Fifth, Plaintiff alleges that Chief Hyland "permitted" Kara to swap on Plaintiff's shifts over his objections, that Chief Hyland was not honest or sincere regarding his support in March 2017 of Plaintiff's decision to deny a swap to Kara, that Chief Hyland manipulated Argonne's overtime system to arrange for Kara to work with Plaintiff in order to antagonize Plaintiff, and that Chief Hyland permitted these swaps to ensure that Kara could harass Plaintiff. SAC ¶ 40, 46, 48-52, 59. Sixth, Plaintiff makes the conclusory allegation that "To [Plaintiff], Hyland's diminishing of Kara's racist act in 2013 was the result of Hyland's own racial bias towards [Plaintiff]." SAC ¶ 53. Seventh, Plaintiff alleges that he complained to others at Argonne regarding Hyland's permitting Kara to swap onto Plaintiff's shifts and that Hyland became aware

---

[1] The facts set forth in this Memorandum are presumed to be true solely for purposes of Defendants' Motion to Dismiss.

of that fact. SAC ¶¶ 54-56. Eighth, Plaintiff makes an additional allegation regarding alleged harassment by Kara in 2017 and 2018 – that Kara called him "Black M\*\*\*F\*\*\*," that Kara used a hostile stare, and that Kara attempted to draw Plaintiff into a physical altercation by "attempting" to elbow him in the ribs as he walked past him." SAC ¶ 60(a). Finally, Plaintiff adds to his previous allegation regarding Chief Hyland's request for him to "purchase and read one book on grammar to help keep your correspondence error-free" and states that this relates to Plaintiff's "unique dialect" based on his being from the South, so that this suggestion is a "racially-based insult." SAC at ¶ 60(b).

As set forth below, none of these new allegations permit the SAC to survive dismissal.

## ARGUMENT

### I. LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) mandates dismissal of a complaint that fails to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must provide the defendant with fair notice of the basis of Plaintiff's claims, and those claims must be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). A plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In evaluating the sufficiency of a complaint, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," nor do legal conclusions stated as factual allegations. *Iqbal*, 556 U.S. at 678. Plausibility "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*.

## II. PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIMS MUST BE DISMISSED

In Counts I and III of the SAC[2], Plaintiff claims that he was subjected to a hostile work environment based on his race. This Court previously dismissed Plaintiff's hostile work environment claims in both the original Complaint and FAC because Plaintiff's allegations did not rise to the required level of severity or pervasiveness. *See* Dkt. 30 at 10-12 and Dkt. 46 at 8-13. The new allegations in the SAC do not remedy this deficiency.

To state a hostile work environment claim, Plaintiff must allege that: (1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment unreasonably interfered with his work performance; and (4) there is a basis for employer liability. *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 476 (7th Cir. 2004). Plaintiff faces a high burden; he must plead facts that his "workplace is permeated with discriminatory intimidation, ridicule, and insult … sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.* 510 U.S. 17, 21 (1993) (internal quotation marks omitted). The court must consider "the frequency or severity of conduct, whether it is threatening and/or humiliating or merely offensive, and whether the harassment unreasonably interferes with an employee's work." *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 645 (7th Cir. 2005); *see also Ford v. Minteq Shapes & Servs., Inc.*, 587 F.3d 845, 847 (7th Cir. 2009) (holding that conduct was not severe or pervasive where coworker called plaintiff a "gorilla"). Courts have long held that "federal law does not protect against petty slights, minor annoyances, and bad manners." *Adam v. Obama for America*, 210 F. Supp. 3d 979, 988 (N.D. Ill 2016) (citing *Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016)) (internal

---

[2] Count I alleges a claim under Title VII, while Count III alleges a claim under Section 1981; the analysis does not differ because Section 1981 closely tracks Title VII where Plaintiff is challenging an employment practice. *Klinger v. BIA, Inc.*, 2011 U.S. Dist. LEXIS 119842 at *7 (N.D. Ill. Oct. 18, 2011).

4

quotations omitted). Such statutes are "not intended to reach every bigoted act or gesture that a worker might encounter in the workplace." *Id*. (internal citations and quotations omitted). Instead, Plaintiff "must show some quantitative or qualitative change in the terms or conditions of [his] employment or some sort of real harm." *Id*. (quoting *Chaib v. Indiana*, 744 F.3d 974, 982 (7th Cir. 2014)).

The SAC still fails to allege facts sufficient to satisfy the severity or pervasiveness requirement of a viable hostile work environment claim. The weakness of Plaintiff's claim is demonstrated by the fact that Plaintiff still attempts to rely almost entirely on incidents that are time-barred or do not involve Defendants at all. *See* SAC at ¶¶ 26-38, 70-71. Plaintiff dedicates several pages of the SAC to discussing his background with his co-worker, Firefighter Richard Kara, and alleged incidents of harassment that occurred at an entirely different employer (the Richton Park Fire Department) in the early 2000's and incidents that occurred at Argonne in 2013. *Id*. The incidents at the Richton Park Fire Department do not involve Defendants and must be disregarded. The 2013 incidents are time-barred, as they occurred more than 300 days prior to Plaintiff's filing his EEOC Charge of Discrimination on September 2, 2017, and Plaintiff failed to exhaust his administrative remedies with respect to the 2013 incidents because he did not file an EEOC charge with respect to them and, in fact, expressly stated his September 2, 2017 Charge that the 2013 incident was not the action he was complaining of. *Id*. at ¶ 57. *See, e.g., Stepney v. Naperville Sch. Dist. 203,* 392 F.3d 236, 240-41 (7th Cir. 2004) (a plaintiff must file a charge of discrimination within 300 days of the alleged unlawful employment practice); *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992) (before filing a lawsuit, a plaintiff first must exhaust his administrative remedies by presenting all of his claims to the EEOC); *see also Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 920 (7th Cir. 2000). Moreover, as discussed at

5

length in prior briefing before this Court, Plaintiff cannot rely on the continuing violation doctrine. *See* Defendants' Memorandum and Reply briefs [Dkt. 17, 28, 38, 45]. In particular, the Richton Park incidents occurred in the early 2000's at an entirely different employer, and the 2013 incidents occurred more than three years before Plaintiff's latest allegations regarding Kara and did not involve Chief Hyland at all. *See Lucas v. Chicago Transit Authority,* 367 F.3d 714, 727 (7th Cir. 2004) (acts that are discrete in time and circumstances do not reinforce each other); *see also Sanford v. Walgreen Co.*, 2009 U.S. Dist. LEXIS 89085 at *12-17 (N.D. Ill. Sept. 23, 2009) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120 (2002)) (dismissing untimely harassment allegations because they were discrete acts that did not contribute to a single hostile work environment).

Indeed, the only instances of alleged harassment that are not time-barred consist of: (1) the alleged comment by Kara of "let the games begin;" (2) Kara's swapping onto Plaintiff's shift and Chief Hyland's permitting him to do so; (3) Kara calling him "Black M***F***," using a hostile stare, and attempting to draw Plaintiff into a physical altercation by "attempting" to elbow him in the ribs as he walked past him; and (4) Chief Hyland's request on Plaintiff's performance appraisal that he "purchase and read one book on grammar to help keep your correspondence error-free." The first two examples relating to the "let the games begin" comment and Kara's shift swaps have previously been reviewed by this Court and held to be insufficiently severe or pervasive. Indeed, Plaintiff merely repeats the same allegations in Paragraph 51 of the SAC that he had made previously in the FAC; these allegations have not gotten any more severe or pervasive through the passage of time. Even more importantly, these allegations relate only to Plaintiff's own subjective and speculative fear of what may happen when he worked a shift with Kara or when he slept at the firehouse when Kara was present, but

do not allege any actual harassment by Firefighter Kara. The fact that Kara swapped on the same shift as Plaintiff does not in and of itself constitute racial harassment.

Thus, the only new harassment allegations are (3) and (4). With respect to the allegations regarding Kara in (3), the name-calling, hostile stare and "attempt" (but apparently not actual physical contact) to elbow Plaintiff in the ribs do are not sufficiently severe or pervasive to constitute a hostile work environment. Other courts have found conduct more serious than this to fail the "severe or pervasive" standard. *See, e.g., Patt v. Family Health Sys., Inc.,* 280 F.3d 749, 754 (7th Cir. 2002) (multiple comments including "the only valuable thing to a woman is that she has breasts and a vagina" insufficient to create hostile work environment); *Lilly v. Roadway Express*, 6 Fed. App'x. 358, 359 (7th Cir. 2001) (stray remarks and use of a racial epithet are insufficient to support a hostile work environment claim); *Adam*, 210 F. Supp. 3d at 985 (granting motion to dismiss hostile work environment claim and citing cases); *Winters v. Hamos*, 2018 U.S. Dist. LEXIS 119685 at *9-13 (N.D. Ill. July 18, 2018) (granting motion to dismiss hostile work environment claim where plaintiff "allege[d] that the Defendant denied him training, failed to give him performance reviews or gave him baseless poor reviews, gave him an excessive workload, denied his Flex Time, and suspended him for seven days," as well as made discriminatory comments); *Triplett v. Starbucks Coffee*, 2011 U.S. Dist. LEXIS 82341 at *12-16 (N.D. Ill. July 26, 2011) (granting motion to dismiss hostile work environment claim). This particularly holds true where Kara is not in a supervisory role over Plaintiff; in fact, it is the opposite. *See* Dkt. 46 at 12. Finally, with respect to (4), Plaintiff's allegations regarding Chief Hyland's comment on Plaintiff's performance appraisal are not severe or pervasive and still are not adequately linked to Plaintiff's race. It defies logic that a request by Chief Hyland to "purchase and read one book on grammar to help keep your ***correspondence*** error-free" would

7

somehow relate to Plaintiff's alleged "unique dialect" based on his being from the South, which would then somehow be a "racially-based insult." *See* SAC at ¶ 60(b) (emphasis added).

For all of these reasons, the SAC does not state a claim for hostile work environment harassment, and this Court should dismiss it with prejudice.

### III. PLAINTIFF'S RETALIATION CLAIMS MUST BE DISMISSED

This Court has twice dismissed Plaintiff's retaliation claims because he failed to establish any adverse action taken against him (much less any causal link to his alleged protected activity). Analysis of the SAC requires the same result; Plaintiff still fails to establish any adverse action taken by Defendants.

To adequately plead a retaliation claim, Plaintiff must allege that he engaged in protected activity, that he suffered an adverse employment action, and that there is a causal link between the two. *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016). An "adverse job action must be materially adverse, meaning more than a mere inconvenience or an alteration of job responsibilities" and which "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 510-11 (7th Cir. 1999); *see also Nichols v. S. Ill. Univ. Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007) ("A [m]aterially adverse employment action is something 'more disruptive than a mere inconvenience or an alteration of job responsibilities'"); *Princeton v. Lowe's Home Ctrs., Inc.*, 2009 U.S. Dist. LEXIS 106561 at *9-11 (N.D. Ill. Nov. 16, 2009).

The SAC alleges the following as adverse actions occurring after Plaintiff claims he engaged in protected activity: (1) Chief Hyland permitted Firefighter Kara to swap with other

firefighters and work on Plaintiff's shift on six occasions in 2017 and encouraged Kara to work on Plaintiff's shift; (2) Chief Hyland told Plaintiff that if he denied Kara a shift trade again without a sufficient operational justification, he would be written up for insubordination and unsatisfactory job performance; (3) Chief Hyland gave him a performance appraisal that "insulted" Plaintiff by requesting that he purchase and read a book on grammar to keep his correspondence error-free; (4) Chief Hyland gave Plaintiff a verbal reprimand; (5) Chief Hyland sent Plaintiff an email suggesting that he needed further training and that he made inaccurate time entries for his shift; (6) Chief Hyland took away Plaintiff's responsibility for managing turnout gear, personnel lockers and clothing; and (7) Chief Hyland excluded Plaintiff from meetings. *See* SAC at ¶¶ 50-52, 60-66. None of these are new allegations; critically, this Court ***already has held*** that these actions do not rise to the level of an adverse action. *See* Dkt. 30 at 16-18 and Dkt. 46 at 16-20. The alleged conduct amounts to nothing more than threats of corrective action, mild corrective action, or insignificant changes in job responsibilities that do not amount to a significant change in Plaintiff's employment status or in his benefits. The only new allegations from the SAC are that, with respect to Firefighter Kara swapping shifts to work with Plaintiff, Chief Hyland "permitted" this conduct over Plaintiff's objections and ("upon information and belief") manipulated the overtime system to arrange for Kara to work with Plaintiff in order to antagonize him. *See* SAC ¶ 52[3]. These new allegations do not alter the actions themselves; the actions in question are that Kara swapped with other firefighters and worked on Plaintiff's shift on six occasions. Whether or not Chief Hyland permitted or encouraged these swaps and his motivations for doing so are not pertinent to the issue of the nature of the actions themselves and whether they are adverse as a matter of law. Here, they are

---

[3] Even these allegations are not entirely new, as the FAC alleged that Chief Hyland took no action to prevent Kara from swapping onto Plaintiff's shift "and in fact encourages Kara to do so." FAC ¶ 35.

not because they are the same actions as alleged in the FAC and they did not constitute any change in Plaintiff's schedule, Plaintiff's job responsibilities, or Plaintiff's benefits. Plaintiff has suffered no adverse employment action because of his alleged protected activity, and his retaliation claims must be dismissed.

**IV. PLAINTIFF'S TITLE VII CLAIMS AGAINST CHIEF HYLAND MUST BE DISMISSED**

The SAC does not state a claim against Chief Hyland in his individual capacity because "a supervisor cannot be held individually liable for claims asserted under Title VII, the ADEA, or the IHRA." *See* Dkt. 30 at 23; *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1168 (7th Cir. 1998); *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995). Therefore, the Title VII claims set forth in counts I and II of the SAC must be dismissed as to Chief Hyland.

**V. DISMISSAL SHOULD BE WITH PREJUDICE**

Dismissal of the SAC with prejudice is appropriate because, having failed in his third bite at the apple, any further amendment by Plaintiff would be futile. *See, e.g., Marijan v. Univ. of Chi.*, 2018 U.S. Dist. LEXIS 211503 at *22-23 (N.D. Ill. Dec. 17, 2018) ("We do agree with the University that plaintiff has had a second bite at the apple and has failed to rectify the deficiencies we noted when we dismissed plaintiff's first complaint. As a result, our dismissal of plaintiff's Amended Complaint is now with prejudice"); *see also Douglas v. Univ. of Chi.*, 619 F. App'x 556, 557-58 (7th Cir. 2015); *Pastoriza v. Keystone Steel & Wire*, 2015 U.S. Dist. LEXIS 165392 at *21 (C.D. Ill. Dec. 10, 2015).

**VI. CONCLUSION**

For the foregoing reasons, Defendants UChicago Argonne, LLC and Chief Hyland respectfully request that the Court grant their Motion to Dismiss Plaintiff's Second Amended Complaint with prejudice and award all other remedies it deems appropriate and just.

          Respectfully submitted,

          UCHICAGO ARGONNE, LLC, and
          GEORGE HYLAND

          By:    /s/ *Todd M. Church*
               One of Their Attorneys

Jeff Nowak
Todd M. Church
Littler Mendelson, P.C.
321 N. Clark St., Suite 1000
Chicago, IL 60654
312-372-5520

Dated: January 10, 2020

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that he caused a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** to be filed with the Clerk of the Court using the Court's CM/ECF system, which will send electronic notification of such filing to all Filing Users this 10th day of January, 2020.

                                                                                                    /s/ *Todd M. Church*
                                                                                                        Todd M. Church

4848-1716-0624.1 101582.1006